IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

GREG DAVIS, AS NEXT FRIEND        *
AND NATURAL GUARDIAN OF           *
JOSHUA DAVIS                      *
                                  *
      PLAINTIFF,                  *
                                  *
vs.                               *
                                  *    CASE NO.1:06-CV-953-MEF
HOUSTON COUNTY                    *
BOARD OF EDUCATION               *
                                  *
      DEFENDANT.                  *

## BRIEF IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

THE DEFENDANT, the Houston County Board of Education,

(hereinafter "HCBOE"), moves the court to enter a full,

final and appealable summary judgment in its favor and

against the Plaintiff as to all counts or portions of the

Plaintiff's Complaint.  The HCBOE submits this Brief,

together with Statement of Undisputed Material Facts and

evidentiary materials, in support of this request.

## **NATURE OF THE CASE; THE ALLEGATIONS**

On the evening of September 16, 2005 at a football game between Wicksburg High School and Houston County High School in Columbia, Alabama, Josh Davis hit, struck or assaulted 2 coaches and cursed, yelled and used profanity towards them. He committed these acts in front of a crowd of students, parents and fans. He was later expelled for his actions.

This lawsuit is filed by Greg Davis (hereinafter "Davis") on behalf of Josh. Davis alleges that the HCBOE violated Josh's right to equal protection as guaranteed by the fourteenth amendment of the Constitution by expelling him from Wicksburg High School. (Complaint, Paragraphs 15 and 16). He alleges that Josh is entitled to compensation for pain and suffering he allegedly endured when expelled and the cost of completing his education at a private high school. (Complaint, Paragraphs 12, 16, 17 and 18).

Davis identifies 2 comparators or allegedly similar incidents between students and staff members at Wicksburg High School, (hereinafter "WHS"), and claims that the students in these comparators were not punished as severely as Josh. Davis claims that this allegedly dissimilar punishment for allegedly similar conduct violates Josh's

right to equal protection.

## THE HCBOE'S POSITION

The HCBOE is entitled to summary judgment because Josh's actions at the football game on September 16, 2005, justified his expulsion and the 2 comparator incidents are not similar.  A public school system has the right and duty to maintain order, respect and discipline among its students.  Given the circumstances Josh's actions certainly justified the disciplinary action taken.

## SUMMARY JUDGMENT STANDARD

Rule 56(c), Fed. R. Civ. P. reads in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In pertinent part, Rule 56(e), Fed. R. Civ. P. reads:

> When a motion for summary judgment is made and supported as provided for in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

In *Celotex Corporation v. Catrett*, 477 U.S. 317 (1986),

the United States Supreme Court states the movant's burden

on motion for summary judgment. In pertinent part, the

Court states:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and [of] identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

\* \* \*

Page 5 of 26

[T]he burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case.

Celotex *Corporation v. Catrett*, 477 U.S. 317, 323, 325 (1986).

A nonmovant, then, must establish each element of his case (at least those elements upon which he bears the burden of establishing at trial) by sufficient evidence in order to withstand a motion for summary judgment. Celotex *Corporation v. Catrett*, 477 U.S. 317, 322-23 (1986).   In pertinent part, the Court states:

In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.   In such a situation, there can be "no genuine issue of material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.   The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex*, 477 U.S. at 322-323.

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242

(1986), the United States Supreme Court states that a nonmovant must support each element of his case (upon which he will bear the burden of proof at trial) by that quantum and quality of evidence required for success at trial. In other words, the nonmovant must submit more than "merely colorable" evidence or merely some evidence of each element. The nonmovant must submit evidence sufficient for a jury to render a verdict in his favor. In pertinent part, the Court states:

> As Adickes, supra, [v. S.H. Kress & Co., 398 U.S. 144 (1970)], and Cities Service, supra, [First National Bank of Arizona v. Cities Service Co., 391 U.S. 253 (1968)], indicate, there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

> As the Court long ago said in Improvement Co. v. Munson, 14 Wall. 442, 448, 20 L.Ed. 867 (1872), and has several times repeated:

> "Nor are judges any longer required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party. * * * [B]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party

Page 7 of 26

producing it, upon whom the onus of proof is
imposed."

> [W]e are convinced that the inquiry involved
> in a ruling on a motion for summary judgment or
> for a directed verdict necessarily implicates the
> substantive evidentiary standard of proof that
> would apply at the trial on the merits.   * * *
> The judge's inquiry, therefore, unavoidably asks
> whether reasonable jurors could find by a
> preponderance of the evidence that the plaintiff
> is entitled to a verdict -- "whether there is
> [evidence] upon which a jury can properly proceed
> to find a verdict for the party producing it, upon
> whom the onus of proof is imposed."  Munson,
> supra, 14 Wall., at 448.

Liberty Lobby, 477 U.S. at 249-50, 251, 252 (Citations
omitted; emphasis supplied); see also, Rollins v. Techsouth,
Inc., 833 F.2d 1525, 1527-28 (11th Cir. 1987), Samples v.
City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988),
Earley v. Champion International Corp., 907 F.2d 1077, 1080-
81 (11th Cir. 1990).

To succeed, then, against the HCBOE on this its
properly supported motion for summary judgment, Greg Davis
must establish each disputed element of his case by a
preponderance of the evidence.  He must produce or come
forward with more probative evidence or more convincing
evidence on each disputed element than that offered against
it.  A preponderance of the evidence has been defined as
"The greater weight of the evidence; superior evidentiary

weight that, though not sufficient to free the mind wholly
from all reasonable doubt, is still sufficient to incline a
fair and impartial mind to one side of the issue rather than
the other. ... [having] the stronger evidence, however
slight the edge may be." *Black's Law Dictionary* 1201 (7th
ed. 1999).

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.    On the night of September 16, 2005, Josh Davis was a student at WHS playing in a football game between Wicksburg and Houston County High in Columbia, Alabama. (Josh Davis Depo. 4 lines 4-18, 6 lines 17-20, 8 lines 11-22).

2.    Early in the third quarter of the game, the Wicksburg coaching staff removed Josh from the game because he was not performing well. (Greg Davis Depo. 11 lines 20-25, Affidavit of Josh Cox, Affidavit of James Murrey, Affidavit of Brad Smith, and Affidavit of Clay Carter).

3.    Coach Brad Smith tried to explain to Josh why he had been removed from the game.  (Greg Davis Depo. 11 line 24 through 12 line 1, Affidavit of Brad Smith).

4.    When Wicksburg's offensive squad retook the field, Josh tried to join them but the coaches made him return to the sidelines.  (Greg Davis Depo. 12 lines 5-8, Affidavit of Brad Smith, Affidavit of Clay Carter, Affidavit of James Murrey).

5.    As Josh was leaving the field and returning to the sidelines several people heard him cursing and using profanity such as "G.. D..." (Affidavit of James Murrey,

Affidavit of Brad Smith).

6.    Also, as Josh was coming off of the field he physically hit or struck Coach Brad Smith. (Affidavit of Brad Smith).

7.    Although Davis claims that Josh simply "bumped into" Coach Smith with his shoulder pad when he walked by him, Coach Smith states in his affidavit "... Josh turned directly towards me and ran in a straight line towards me. I continued to coach the other players, however, I saw Josh Davis coming towards me out of the corner of my eye. As Josh got closer I heard him saying the words "G.. D..." and other profanity. Once Josh reached my position, he threw his shoulder and elbow into my shoulder and side." (Affidavit of Brad Smith; emphasis supplied; and see Greg Davis Depo. 12 lines 9-12).

8.    Coach Smith was standing on the sidelines of the field on an even plane with Josh. (See, Affidavit of Brad Smith). Davis, on the other hand, was sitting in the spectator's stands with other spectators and with a fence and players standing on the sidelines between him and the field. (See, Greg Davis Depo. 12 lines 15-19).

9.    Coach Clay Carter describes the event in his

affidavit as well: "When Josh was told to come off of the field, he turned and looked directly at Coach Smith.  Josh then began coming off of the field and ran shoulder first into Coach Smith.  It was evident that Josh ran into Coach Smith on purpose because of the path he took off of the field."  (Affidavit of Clay Carter; emphasis supplied). Coach Carter was also on the sidelines of the field on a level visual plane with Josh.  Id.

10.  James Murrey, the principal of WHS, describes the event: "As Josh was leaving the field he stated that someone was a 'G.. D... Idiot.'  He continued off of the field and ran toward Coach Smith.  Josh hit Coach Smith with his forearm as he was coming off of the field."  (Affidavit of James Murrey; emphasis supplied).

11.  After Josh ran into and hit Coach Smith, Smith grabbed him and explained that hitting a coach and cursing and other disrespectful behavior would not be tolerated. (Affidavit of James Murrey, Affidavit of Clay Carter, Affidavit of Brad Smith).

12.  Josh then began throwing his arms around and acting aggressively; specifically, yelling at, cursing at, and attempting to hit Coach Smith.  (Affidavit of Clay

Carter, Affidavit of Brad Smith).

13. Principal Murrey describes Josh's actions as:
"After Coach Smith's comments, Josh went ballistic."
(Affidavit of James Murrey).

14. Coach Clay Carter tried to get in between Josh and
Coach Smith in an effort to calm Josh down. (Affidavit of
James Murrey, Affidavit of Clay Carter, Affidavit of Brad
Smith).

15. Josh then hit or struck Coach Clay Carter.
(Affidavit of Brad Smith, Affidavit of Clay Carter,
Affidavit of James Murrey, Deposition of Greg Davis 12 Line
23 through 13 Line 4).

16. Greg Davis describes the incident with Coach
Carter as follows: "When he (Josh) stood up, he bumped him
(Clay Carter) in the face. The guy's glasses crooked. He
walked off." (Greg Davis Depo. 13 lines 2-4).

17. Coach Clay Carter describes the event as:
"As I was trying to calm Josh down, he swung his fist and
hit me in the left eye knocking my glasses and my hat off of
my head." (Affidavit of Clay Carter; emphasis supplied).

18. Coach Brad Smith describes the event as: "Seeing
Coach Carter's attempts to control the situation I released

my hold on Josh's shoulder pads. <u>Josh then turned and
punched Coach Carter in his left eye</u>." (Affidavit of Brad
Smith; emphasis supplied).

19.  Wanda Seals was a spectator at the game and saw
Josh hit Coach Carter.  She describes the event as: "At that
time, Josh turned and <u>hit Coach Carter in the face knocking
his glasses off and giving him a swollen eye</u>.  Josh then
<u>continued pushing</u> Coach Carter after he had <u>punched</u> him in
the face." (Affidavit of Wanda Seals; emphasis supplied).

20.  After hitting Coach Carter, Josh threw his helmet
at Coach Smith striking him in the hip. (Affidavit of Brad
Smith, Affidavit of James Murrey).

21.  The coaches began calling for police and Josh was
escorted off the field by an off duty law enforcement
officer. (Greg Davis Depo. 13 line 9 through 14 line 1,
Affidavit of Clay Carter, Affidavit of Brad Smith, Affidavit
of Wanda Seals, Affidavit of Josh Cox, Affidavit of James
Murrey).

22.  Deputies with the Houston County Sheriff's
Department asked Coach Carter if he wanted to file charges
against Josh and Carter filed charges. (Affidavit of Clay
Carter).  The Sheriff's deputies photographed Carter's

injuries and began an investigation of the incident.
(Affidavit of Clay Carter).

23.  Josh does not recall many of the events that
occurred during the football game; he believes he was
suffering from a concussion.  (Josh Davis Depo. 9 line 22
through 11 line 20, 41 lines 20-24).

24.  Josh's parents did not seek any medical treatment
for Josh, or his alleged concussion, until Monday, September
19, 2005.  (Greg Davis Depo. 18 line 2 through 19 line 3).

25.  Based on recommendations of the principal and
superintendent, and after a hearing, the HCBOE expelled Josh
because of his conduct at the football game on September 16,
2005.  (Complaint paragraphs 10 & 11; Answer paragraphs 10 &
11; and see, Greg Davis Depo. 27 lines 20-25, Josh Davis
Depo. 20 line 4 through 21 line 7).

26.  Davis contends that 2 similar incidents occurred
at WHS and that the students involved in these incidents
received less severe punishment than Josh.  Specifically,
Davis contends that a WHS student, L.H., kicked a custodian,
Susan Sanders, in the rear and was not expelled, and that, a
6th grader, C.L., cursed at and supposedly hit a teacher,
Judy Childs, and was not expelled.  (Greg Davis Depo. 50 line

3 through 51 line 21; and see, Josh Davis Depo. 30 line 6
through 32 line 16).

27.  The school custodian, Susan Sanders, and a
student, L.H., "horse played" and joked with each other on
the school grounds.  (Affidavit of Cheryl Smith).

28.  Sometime during the 2003-2004 school year, L.H.
took the "horse playing" too far and kicked or hit Sanders
in the rear.  (Affidavit of Cheryl Smith).

29.  Sanders reported the incident to Cheryl Smith who
was a WHS Assistant Principal at the time.  (Affidavit of
Cheryl Smith).

30.  Sanders informed Smith that L.H. kicked or hit her
in the rear, that she believed the kick was disrespectful;
but that she did not believe L.H. intended to harm her.
(Affidavit of Cheryl Smith).

31.  Sanders did not want any formal disciplinary
procedures to take place, but she did ask that Smith speak
to L.H. and explain that his conduct was inappropriate.
(Affidavit of Cheryl Smith).

32.  Smith discussed this incident with L.H. and
informed him that kicking or hitting Sanders was
disrespectful and outside the realm of horse play; L.H.

apologized. (Affidavit of Cheryl Smith).

33. Smith describes the disciplinary actions she took with regards to L.H. in her affidavit: "I explained to L.H. that he would not face more severe punishment because Ms. Sanders did not believe [he] had kicked her in anger and/or with intent to harm her. I clearly stated to L.H. that if anything similar to this event happened again he would be sent to alternative school." (Affidavit of Cheryl Smith).

34. The incident between Judy Childs and C.L. occurred in 2006 while C.L. was a 6th grade student at WHS. (Affidavit of Judy Childs, Affidavit of Cheryl Smith).

35. One day during break several students reported to Childs that C.L. had locked another student inside a nearby bus. (Affidavit of Judy Childs, Affidavit of Cheryl Smith).

36. When Childs confronted C.L. about this he walked away from her. (Affidavit of Judy Childs, Affidavit of Cheryl Smith).

37. Childs called for C.L. to stop, and then caught up with him and placed her hand on his shoulder. (Affidavit of Judy Childs, Affidavit of Cheryl Smith).

38. C.L. responded by turning around, throwing up his hands, and saying, "Get your hands off me b....!"

(Affidavit of Judy Childs, Affidavit of Cheryl Smith).

39. C.L. then turned away and began to walk away from
Childs again.   (Affidavit of Judy Childs).

40. Despite rumors to the contrary, C.L. did not hit
Childs. (Affidavit of Judy Childs, Affidavit of Cheryl
Smith).

41. Smith investigated this incident and began
disciplinary procedures against C.L. for his actions.
(Affidavit of Cheryl Smith, Affidavit of Judy Childs).

42. C.L. was disciplined by corporal punishment.
(Affidavit of Cheryl Smith, Affidavit of Judy Childs).

## **ARGUMENT**

"The Equal Protection Clause of the Fourteenth Amendment commands that no state shall deny any person within its jurisdiction equal protection of the laws." *Hammock ex rel. Hammock v. Keys,* 93 F. Supp.2d 1222, 1231 (S.D. Ala. 2000). "The Equal Protection Clause of the Fourteenth Amendment does not require all persons to be treated either identically or equally." *Hammond v. Auburn University*, 669 F. Supp. 1555, 1563 (M.D. Ala. 1987). "To establish an equal protection claim, a plaintiff must initially show that he or she was treated differently from other individuals similarly situated." *James By and Through Singleton v. Tallassee High Sch.,* 907 F. Supp. 364, 367 (M.D. Ala. 1995), citing *Cleburne v. Cleburne* Living Ct., 473 U.S. 432, 439 (1985).

Davis claims that the Board denied Josh the equal protection of the law guaranteed by the Fourteenth Amendment when it expelled him for his actions at the football game on September 16, 2005.  To succeed on his claim Davis must show by a preponderance of the evidence that Josh was disciplined differently and more severely than other similarly situated Wicksburg students for similar actions.  Davis cannot meet

Page 19 of 26

this burden because Josh is not similarly situated to L.H. and C.L., nor are their actions similar.

First, Josh is not similarly situated to L.H., nor are their actions similar. L.H. and Josh were both high school students at WHS; however, their similarities end there.

L.H. and the WHS custodian, Susan Sanders, engaged in a pattern of horse playing and joking with one another at school. (Affidavit of Cheryl Smith). This playing and joking went too far when L.H. kicked or hit Sanders in the rear. Id. This incident occurred on school grounds, but Davis has offered no evidence that it occurred in front of a large group of people. Id. Sanders was not injured physically, nor did she feel that L.H. intended to harm her. (Affidavit of Cheryl Smith). Sanders reported the incident because she thought L.H.'s action was disrespectful. Id. Sanders did not want L.H. disciplined formally. (Affidavit of Cheryl Smith). L.H. was reprimanded and he apologized for his action. Id.

Contrast this with Josh Davis's actions. Josh was taken out of the football game because he was performing poorly. (Greg Davis Depo. 11 lines 20-25, Affidavit of Josh Cox, Affidavit of James Murrey, Affidavit of Brad Smith, and

Affidavit of Clay Carter). When the ball changed hands (and the offensive squad returned to the field) Josh, without permission from the coaches who had just taken him out of the game, returned to the field. (Greg Davis Depo. 12 lines 5-8; Affidavit of Brad Smith; Affidavit of Clay Carter; Affidavit of James Murrey). When the coaches called him back off the field Josh began cursing and using profanity, ran straight for Coach Smith, and physically hit or struck Smith with his shoulder and elbow. (Affidavit of Brad Smith; Affidavit of Clay Carter; Affidavit of James Murrey). Josh, of course, had on a football uniform with pads and Coach Smith did not.

Josh then began throwing his arms, cursing, yelling and attempting to hit Coach Smith again. (Affidavit of Clay Carter). When Coach Carter tried to calm Josh down Josh hit him in the left eye with his fist. (Id; and Affidavit of Brad Smith, Affidavit of Wanda Seals). Josh then threw his helmet at Coach Smith and hit Smith yet again. (Affidavit of Brad Smith; Affidavit of James Murrey). All of this occurred at a football game attended by students, parents, and persons from the community.

Each of Josh's actions was intentional and meant to

cause harm. Further, the coaches called for the police to intervene and Coach Carter filed formal charges with the police against Josh. (Affidavit of Clay Carter, Affidavit of Brad Smith, Affidavit of Wanda Seals, Affidavit of Josh Cox, Affidavit of James Murrey, and see Greg Davis Depo. 13 line 9 through 14 line 1).

L.H.'s actions in horse playing with and hitting Sanders were playful, unintentional and not meant to cause harm. L.H. and his actions are not similar to Josh and his actions.

Second, Josh is not similarly situated to C.L., nor are their actions similar. C.L. was a 6th grade student at Wicksburg Middle School; Josh was a senior at Wicksburg High School. Arguably, a senior in high school is better able to understand the consequences of, and the inappropriateness of, his actions than a 6th grader. *See, Hammock ex rel. Hammock v. Keys,* 93 F. Supp. 2d. 1222, 1231-2 (S.D. Ala. 2000) ("The Court finds that Plaintiff is not likely to prevail on an equal protection claim because the Rosington Elementary School students are not "similarly situated" to Plaintiff. First and foremost, Plaintiff, as a high school senior, is unlike a sixth grade student, and the Court

Page 22 of 26

rejects the proposition that equal protection requires that elementary and high school students be treated identically in school discipline cases.").

Judy Childs confronted C.L. about whether he locked another student inside a nearby bus. (Affidavit of Judy Childs; Affidavit of Cheryl Smith). He walked away and, when Childs caught up with him, said "Get your hands off me b....!" Id. He did not hit or strike Childs. (Affidavit of Judy Childs; Affidavit of Cheryl Smith). This incident did not occur in the presence of hundreds of onlookers. C.L. was disciplined with corporal punishment. Id.

Contrast, again, Josh's actions. When taken out of the game for poor performance he began cursing and using profanity. He then attempted to go back in the game without permission, and when the coaches made him return to the sidelines he ran straight for one of the coaches and hit him with his shoulder and elbow. He then threw his arms, cursed, yelled, and attempted to hit the coach again. When another coach intervened Josh punched him in the eye and then threw his helmet. All of this occurred in front of hundreds of students, parents and people from the community. Josh caused actual physical injury and the coaches were

Page 23 of 26

convinced that he intended to harm them.

C.L.'s actions are simply not similar to Josh's.  The
two are not similarly situated.

## **CONCLUSION AND PRAYER FOR RELIEF**

BASED ON THE FOREGOING arguments, evidence, and authorities, the HCBOE is entitled to summary judgment in this matter. The two allegedly comparative students and incidents are simply not similar to Josh and his actions.

L.H. horse played and joked with Sanders, and although he did hit or kick Sanders, it was done in a playful manner, no physical injury resulted, and he did not intend to harm her. Also, the incident did not occur in front of hundreds of students and onlookers.

C.L. was a 6th grader when the allegedly similar incident occurred, while Josh was a high school senior. C.L. did use a profane word, "b....," towards Judy Childs, but he did not hit or strike her. Again, there was no actual physical injury and the incident did not occur in front of hundreds of spectators.

The two allegedly comparative events or similarly situated students are not similar. Davis cannot prevail on his equal protection claim.

WHEREFORE, the HCBOE moves the Court to grant it a full, final, and appealable summary judgment against the Plaintiff in this matter as to the single count of the

Page 25 of 26

Complaint, or alternatively, to enter such further, greater, or different relief as the evidence and law entitle it.

HARDWICK, HAUSE, SEGREST & WALDING

BY: _____
    Jere C. Segrest (SEG005)
    ASB-1759-S-80J

BY: _____
    Kevin Walding (WAL036)
    ASB 8121-I-69J

BY: _____
    Patrick B. Moody (MOO110)
    ASB 0905-T-73M
    Post Office Box 1469
    Dothan, Alabama 36302
    (334) 794-4144
    (334) 671-9330 (FAX)
    ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that, this date, I have served a copy of this document on the following attorney (s) of record by placing a copy in the United States Mail in a properly addressed envelope with prepaid postage.

Malcolm R. Newman, Esq.
Attorney at Law
Post Office Box 6137
Dothan, Alabama 36302

    This the 14th day of November, 2007.

_____
Of Counsel

Page 26 of 26