```
         IN THE DISTRICT COURT OF THE UNITED STATES
            FOR THE MIDDLE DISTRICT OF ALABAMA
                     SOUTHERN DIVISION
```

GREG DAVIS, AS NEXT FRIEND        *
AND NATURAL GUARDIAN OF           *
JOSHUA DAVIS                      *
                                  *
    PLAINTIFF,                   *
                                  *    CASE NO.1:06-CV-953-MEF
vs.                               *
                                  *
HOUSTON COUNTY, ALABAMA           *
BOARD OF EDUCATION                *
                                  *
    DEFENDANT.                   *

## DEFENDANT'S REPLY TO PLAINTIFF'S ANSWER TO MOTION FOR SUMMARY JUDGMENT

The Defendant, Houston County Board of Education, (hereinafter "HCBOE" or "the Board") replies to the Plaintiff's ("Davis") Answer to Motion for Summary Judgment:

**1. Davis's reliance on Freet's deposition testimony is misplaced; Davis did not designate Freet as an expert and Freet cannot qualify as an expert on Josh's medical condition.**

Davis relies heavily on the deposition testimony of Allen Freet, a licensed professional counselor and not a medical doctor, although Davis did not designate Freet as an expert in this case.

Section 8 of this Court's Uniform Scheduling Order requires Davis to disclose the identity and provide any report of anyone he intended to use as an expert at the

trial of this matter.  This Court s Order also requires the parties to comply fully with the requirements of Fed. R. Civ. P. 26(a)(2).

In relevant part, Fed. R. Civ. P. 26(a)(2)B states:

> The report [produced by the expert] shall contain a complete statement of all opinions to be expressed and the basis and the reasons thereof; the data or other information considered by the witness informing the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications offered by the witness within the preceding 10 years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition with the preceding 4 years.

Davis failed to designate anyone, including Freet, as an expert witness in this matter.  Further the Board has not received a report from anyone that meets the requirements of Fed. R. Civ. P. (a)(2)(B).

Davis produced only one document generated by Freet: document 14-3 pages 12 and 13.  This is a letter from Allen Freet to the Plaintiff s attorney, Malcolm Newman, Esq.  This document does not contain the information required by Fed. R. Civ. P.26(a)(2)(B) to qualify it as a valid expert report.

The Board contends that Davis should not be allowed to

rely on Freet's testimony as a purported expert. If Davis cannot, Freet's testimony would be treated as that of a lay witness.

Fed. R. Evid. 701 concerns the opinion testimony by lay witnesses and reads:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Freet, as a lay witness, is only competent to testify about matters within his personal knowledge. Fed. R. Evid. 602 reads:

> A witness **may not** testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony. This rule is subject to the provisions of Rule 703, relating to opinion testimony by expert witnesses.

Freet is not an expert witness, therefore, he cannot rely upon facts or data that are not within his personal knowledge of the events of the football game on September 16, 2005. Davis has produced no evidence to show that Freet

or any of his opinions concerning Josh's medical condition on September 16, 2005 are based on Freet's personal observations of that football game.

Freet's deposition testimony discusses the information he used to form the opinions he expresses in his letter to Mr. Newman:

> Q. [By Mr. Moody]...
>    First off, how many times did you consult with Josh, before this September 26th report?
>
> A. [By Mr. Freet]
>    I did the report based on the one intake history and information that I did on the 21st, and the medical report received back from the doctor, and discussions with family, his history, his scholastic and aptitudes prior to the actual time that I saw him.
>
> Q. Okay. So, this September 26th letter -- or, at the time of this September 26th letter, you had met with Josh one time?
>
> A. Yes.
>
> Q. And you had, then, discussed Josh's situation with some of his family members?
>
> A. Mostly with Josh.
>
> Q. Mostly with Josh?
>
> A. (Witness nodding head in affirmative.)
>
> Q. Do you remember which family members you spoke with, to gather some of this information?

> A. I talked to his mother, and - - I actually did not talk to his father at all, that I know of.
>
> Q. Okay. And you said that you relied upon the medical records from the doctor? Is that doctor that you were referring to, Doctor Tamburin - -
>
> A. Uh-huh. - - That you mentioned in your report?
>
> A. Right.
>
> Q. Okay. What did you learn from the doctor's Report, when you reviewed it?
>
> A. The doctor's report, to me, validated that Josh Davis, on the night, in the football game had suffered a concussion or head injury, probably a mild concussion, commonly referred to as a TBI, in the field, which stands for traumatic brain injury.
>
> .....
>
> Q. And so, this would have been the report that you used to draft your report?
>
> A. Yes.

(Freet Depo. 21, Line 19 through 23, Line 22).

In addition to Dr. Tamburin's report, Freet relied upon the information that Josh and his mother provided about Josh's past without independently investigating this information. Both Tamburin's report and the information provided by Josh and his mother would be matters that Freet did not observe personally.

Freet testifies:

> Q. [By Mr. Moody]
> And lets talk about that, Mr. Freet. You mentioned Josh s normal temperament and disposition in your report, and you Talk about him being involved in athletics and his involvement in student government and other clubs. Where did you receive all of this information at?
>
> A. [By Mr. Freet]
> Some from Josh, some from his mother.
>
> Q. Did you follow up this information with the Houston County School Board?
>
> A. Who did I talk to at the school? I did not go to the school. I talked with somebody at the school. I cannot remember who it was. But it was, like, more in passing, if any of this stuff was factual, and they said yes. But I cannot remember who I talked to.
>
> Q. So, you never conducted any type of investigation to confirm that these fact were true at Wicksburg High School, or with the Houston County Board of Education?
>
> A. No, I did not.
>
> Q. So, your mention of his involvement in these Clubs and in athletics would have come solely From Josh and his mother?
>
> A. Right.

(Freet Depo. 30, Line 23 through 31, Line 24).

Freet does not have any personal knowledge concerning Josh before September 21, 2005. (Freet Depo. 20, Lines 1-5). Freet admits in deposition that Josh was not seeking

treatment from him for any alleged head trauma but for Josh's inability to adjust and deal with the consequences of his own actions:

> Q. [By Mr. Moody]
> What, exactly - - or what behaviors are you describing as erratic, here?
>
> A. [By Mr. Freet]
> **What Josh reported to me in my notes, his response to the coaches and stuff that night, on the field. He had problems with what had happened.**
>
> **And, for the record, Josh came to me more because he was having adjustment issues and depression, due to what was ongoing, rather than the head trauma. And that was why I was initially seeing him, was more of his inability to adjust to those erratic changes and stuff.**

(Freet Depo. 26, Lines 12-23). (emphasis supplied).

Freet is a licensed professional counselor. (Freet Depo. 8, Lines 7-11). Freet is not a medical doctor and his testimony shows he is not qualified to give medical opinions:

> Q. [By Mr. Moody]
> Now, Mr. Freet, did you ever attend medical school?
>
> A. [By Mr. Freet]
> I did not.
>
> Q. And have you ever attended any kind of training to become a registered nurse or a licensed nurse?

      A.    I have not.

      Q.    Have you ever taken any academic classes or courses, related to nursing or becoming a medical doctor?

      A.    Other than first aid classes and those type Of things, no.

      Q.    And would those first aid classes have been Through the Red Cross and the military, or - -

      A.    Uh-huh. Red Cross.

(Freet Depo. 19, Lines 3-18).

**2. Davis has not presented any evidence to show that Josh suffered from a concussion during the September 16, 2005 football game.**

Davis offers a letter and two pages of medical records ostensibly from the Dothan Pediatric Clinic in Exhibit 1, Document 14-3, pages 14, 15 and 16, in support of his Answer to Motion for Summary Judgment. These documents are inadmissible hearsay. Inadmissible hearsay cannot be considered on a motion for summary judgment. *Bozeman v. Orum*, 199 F. Supp. 2d 1216 (M.D. Ala. 2002). Also, documents must be properly authenticated in order for them to be considered on summary judgment. *Id.* at 1222.

The simple two sentence letter accompanying the two pages of apparent medical records does not authenticate the

records as evidence. Fed. R. Evid. 803(6) details the requirements for business records to be considered an exception to the hearsay exclusion. Fed. R. Evid. 803(6) states:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, **a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness**, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term business as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

(Emphasis supplied).

In addition, document 14-3, pages 14, 15 and 16, are not self-authenticating documents and Davis has failed to produce any affidavit or other evidence to authenticate these records. See Fed. R. Evid. 901 and 902.

Also, Davis has not produced any evidence that Dr. Tamburin or any medical doctor presented any type of evidence to the Board at the expulsion hearing. Davis's reliance on a licensed professional counselor, Allen Freet,

to successfully place into evidence a medical doctor s report is incompatible with Freet s role as a lay witness.

### 3. Davis has not authenticated document 14-2, pages 2, 3 and 4.

Davis attempts to support his Answer to Motion for Summary Judgment with pages from the Houston County Schools Student Code of Conduct, document 14-2, pages 2, 3 and 4. Davis claims that these documents show that L.H. committed the same type of offense as Josh, but that he was not expelled. (Davis Answer to Motion for Summary Judgment, 4). Davis fails to produce any evidence authenticating Document 14-2, pages 2, 3 and 4, and these pages are not self authenticating. See Fed. R. Evid. 902 and 902. Documents must be properly authenticated in order to be considered on summary judgment. *Bozeman*, 199 F. Supp. 2d 1216, 1222.

BASED ON THE FOREGOING, and on the motion, brief in support, and evidentiary submissions properly and duly submitted by the Board this Court should grant summary judgment.

                              HARDWICK, HAUSE, SEGREST & WALDING

                              BY:   /s/ Jere C. Segrest
                                    Jere C. Segrest (SEG005)
                                    ASB-1759-S-80J

```
BY:    /s/ Kevin Walding
       Kevin Walding (WAL036)
       ASB-8121-I-69J


BY:    /s/ Patrick B. Moody
       Patrick B. Moody (MOO110)
       ASB 0905-T-73M
       Post Office Box 1469
       Dothan, Alabama 36302
       Phone:  (334)794-4144
       Fax:    (334)671-9330
       ATTORNEYS FOR DEFENDANT
```

CERTIFICATE OF SERVICE

I hereby certify that, this date, I have served a copy of this document on the following individual(s) or attorney(s) of record by placing a copy in the United States Mail in a properly addressed envelope with adequate postage.

Malcolm R. Newman, Esq.
Attorney at Law
Post Office Box 6137
Dothan, Alabama 36302

This the 19th day of December, 2007.

```
                         /s/ Kevin Walding
                         Of Counsel
```