IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| GREG DAVIS, AS NEXT FRIEND AND NATURAL GUARDIAN OF JOSHUA DAVIS, ) ) ) ) | |
| Plaintiff, ) | |
| v. ) | CASE NO. 1:06-cv-953-MEF |
| ) | |
| HOUSTON COUNTY, ALABAMA, ) BOARD OF EDUCATION, ) ) | (WO) |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Greg Davis ("Plaintiff") has brought this action on behalf of his son, Joshua Davis ("Joshua Davis"). Plaintiff alleges that Houston County, Alabama, Board of Education ("Defendant" or "the Board") is liable under 42 U.S.C. § 1983 for violations of Joshua Davis's Fourteenth Amendment right to equal protection. This cause is before the Court on Defendant's Motion for Summary Judgment (Doc. # 8), filed November 15, 2007, and Defendant's Motion to Strike (Doc. # 16), filed December 19, 2007.

The Court has carefully considered all submissions in support of and in opposition to the motions and surveyed the relevant case law. For the reasons set forth below, the Court finds that Defendant's Motion for Summary Judgment is due to be GRANTED, and that Defendant's Motion to Strike is due to be GRANTED IN PART AND DENIED IN PART.

**I. JURISDICTION AND VENUE**

The Court exercises subject matter jurisdiction over Plaintiff's claims pursuant to 28

U.S.C. §§ 1331 (federal question), and 1343(4) (civil rights). The parties contest neither personal jurisdiction nor venue, and the Court finds an adequate factual basis for each.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1496 (11th Cir. 1996) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transp.,* 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami,* 52 F.3d 918, 921 (11th Cir. 1995) (internal quotation marks and citations omitted)).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden

by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the nonmovant and must draw all justifiable inferences from the evidence in the nonmoving party's favor. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *McCormick v. City of Fort Lauderdale,* 333 F.3d 1234, 1243 (11th Cir. 2003) (the evidence and all reasonable inferences from the evidence must be viewed in the light most favorable to the nonmovant). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

## III.  FACTS AND PROCEDURAL HISTORY

The Court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to the motion. The submissions of the parties, viewed in the light most favorable to the non-moving party (Plaintiff), establish the following relevant facts:

On September 16, 2005, Joshua Davis was a senior at Wicksburg High School ("WHS"), and he was playing in a high school football game in Columbia, Alabama between WHS and Houston County High.  At some point in the first half of the football game, Joshua Davis suffered a head injury that may have resulted in temporary loss of consciousness; however, Joshua Davis continued to play in the game.  During halftime, Joshua Davis vomited.

When the game resumed at the start of the third quarter, Joshua Davis returned to the game as normal.  However, early in the third quarter, the WHS coaches decided Joshua was not playing well and took him out of the game.  Coach Brad Smith ("Coach Smith") explained to Joshua Davis why he had been removed from the game.  Afterwards, when WHS offense retook the field, Joshua Davis tried to join them, but the coaches made him return to the sidelines.

At this point, as he was returning to the sideline, Joshua Davis hit Coach Smith with his shoulder pad as he walked by.  Coach Smith grabbed Joshua Davis and told him that hitting a coach would not be tolerated.  According to the Board, Joshua Davis went

"ballistic" and started flailing his arms and yelling.  The Board also claims that Coach Clay Carter ("Coach Carter") attempted to break up the confrontation and calm Joshua Davis down, but when he approached Joshua Davis swung his fist and hit Coach Carter in the left eye, knocking his hat and eyeglasses off his head.  They also allege that Joshua Davis threw his helmet at Coach Smith.  However, Plaintiff has presented evidence that after Joshua Davis "bumped" Coach Smith, he sat down on the bench.  Then, after Coach Carter approached him, Joshua Davis stood up.  As he stood up, he "bumped" Coach Carter in the face, but did not hit him with his fist.  The coaches called for police and Joshua Davis was escorted off the field by an off-duty police officer.

On September 19, 2005, the following Monday, Joshua Davis saw Dr. Jeffrey Tamburin ("Dr. Tamburin").  Dr. Tamburin informed Joshua Davis and his family that he might have suffered a concussion during the football game, and that it was possible his "erratic behavior" was caused by the concussion.  On September 21, 2005, Joshua Davis began to see Virgil Freet ("Freet"), a licensed professional counselor, for therapy related to difficulties he was having coping with the events at the football game.  Freet is not a medical doctor and has never attended medical school.  However, based on Dr. Tamburin's diagnosis that Joshua Davis had suffered a concussion, as well as Joshua Davis's standing in school and academic record,[1] Freet agreed with Dr. Tamburin's opinion that the erratic behavior at

---

[1] Freet based his conclusion on the following factors: Joshua Davis had played football since he was seven years old and had never had a disciplinary incident, Joshua Davis was a member of a number of extracurricular organizations including Student Government

the football game was caused by a concussion.

The Houston County Board of Education conducted a disciplinary hearing involving Joshua Davis regarding his behavior at the football game. The principal and superintendant both recommended Joshua Davis be expelled. Freet appeared at this hearing and discussed his opinion that Joshua Davis had suffered a concussion and that his behavior was the result of his injury. Ultimately, the Board elected to expel Joshua Davis.

Greg Davis, the father of Joshua Davis, filed this claim on October 20, 2006 in this Court. Plaintiff alleges that the Board's expulsion of his son violated his right to equal protection.

### IV.  DISCUSSION

**A.  Motion to Strike**

Before this Court addresses the merits of the Board's summary judgment motion, it must address certain evidentiary issues raised in the Board's motion to strike. This motion moves to exclude a number of exhibits Plaintiff has offered in opposition to summary judgment, including: the medical records from Dr. Tamburin of Joshua Davis's visit, the two-page letter from Freet to Malcolm Newman, Plaintiff's attorney, stating Freet's opinion that Joshua Davis's behavior was caused by a concussion, as well as any reference to his

---

Association ("SGA"), BETA Club, Junior Varsity Athletics, Varsity Athletics, Future Farmers of America, he had been elected President of the SGA in his junior year, and in his senior year Joshua Davis was elected SGA class representative as well as the student with the "Best Personality."

conclusions in his deposition testimony, and the Houston County School's Student Code of Conduct.

### 1. Dr. Tamburin's Medical Records

Defendant has moved to exclude these medical records on the ground that it is hearsay and has not been properly authenticated under Fed. R. Evid. 803(6) (business records exception). The general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment. *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999). However, a court may consider hearsay statements if it is evident that the statements could be "reduced to admissible form" at trial. This Court interprets *Macuba* as meaning that a court can consider unauthenticated evidence at the summary judgment stage, over an objection, when it is apparent that the evidence can be reduced to admissible, authenticated form at trial. *See Bozeman v. Orum*, 199 F. Supp. 2d 1216, 1222 (M.D. Ala. 2002) (Thompson, J.).

Here, it is apparent that Dr. Tamburin's medical record for Joshua Davis could be reduced to admissible form at trial. On the face of the record, there is nothing that indicates the record is unusual or not kept in the ordinary course of business. Accordingly, this Court will consider the record in ruling on summary judgment.

However, just because the record is admissible does not mean it is admissible for all purposes. Dr. Tamburin has not been qualified as an expert under Fed. R. Evid. 702 because there is no evidence before this Court of Dr. Tamburin's medical training or experience.

Accordingly, any opinions contained in the record based upon scientific, technical, or other specialized knowledge are inadmissible pursuant to Fed. R. Evid. 701. *See, e.g.*, *U.S. Aviation Underwriters, Inc. v. Yellow Freight Sys., Inc.*, 296 F. Supp. 2d 1322, 1331 (S.D. Ala. 2003) (unqualified expert opinions inadmissible at summary judgment).

### 2.     Code of Conduct

The Board argues that its own code of conduct is inadmissible for summary judgement as being unauthenticated by Plaintiff. However, the Court finds that the record is self-authenticating under Fed. R. Evid. 902(5) because it is a publication purporting to be issued by public authority; as well as Fed. R. Evid. 901(4) due to distinctive characteristics.

### 3.     Freet's Expert Opinions

The Board has moved to exclude all evidence of Freet's opinions and conclusions related to the cause of Joshua Davis's behavior at the football game contained in his deposition as well as Freet's letter to Malcolm Newman. The Board argues that Freet is not qualified to give expert testimony, and that Plaintiff failed to comply with Fed. R. Civ. P. 26(a)(2)(B) by not providing a report of Freet's testimony that includes all of the information required by Rule 26(a)(2)(B).

By its own terms, Rule 26(a)(2)(B) applies only to a witness "who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony." Moreover, the Advisory Committee Note to the 1993 Amendments says that "[a] treating physician, for example, can be deposed

8

or called to testify at trial without any requirement for a written report." Fed. R. Civ. P. 26(a)(2)(B) advisory committee note; *see Prieto v. Malgor*, 361 F.3d 1313, 1319 (11th Cir. 2004).

All of the facts upon which Freet's opinions are based were learned by him during the course of treatment, not in preparation for trial. Therefore, Rule 26(a)(2)(B) does not apply to Freet's testimony. *See Prieto*, 361 F.3d at 1319 (because witness provided technical evaluation based on evidence reviewed in preparation for trial, he was not analogous to treating physician exempt from Rule 26(a)(2)(B)).

In order to consider Freet's expert opinions, this Court must find that Freet meets the requirements of Fed. R. Evid. 702. Rule 702 requires an expert to be qualified by "knowledge, skill, experience, training, or education." *See United States v. Frazier*, 387 F.3d 1244, 1260-61 (11th Cir. 2004). Freet is not a medical doctor and never attended medical school. The only evidence of Freet's qualifications are: approximately five years working for the Department of Veterans Affairs in the vocational rehabilitation program, followed by approximately seven years working in private practice as a "licensed professional counselor." There is no evidence in the record of Freet's educational background, or any details of the exact nature of Freet's work experience.

Under these circumstances, there is insufficient evidence for the Court to find that Freet is qualified as an expert witness under Rule 702. Accordingly, this Court will disregard any opinions offered by Freet that are based on "scientific, technical, or other specialized

9

knowledge." Fed. R. Evid. 701.[2]

**B.    Summary Judgment**

The Board argues that it is entitled to summary judgment because Plaintiff has failed to establish a prima facie case of a violation of the equal protection clause of the Fourteenth Amendment. The Equal Protection Clause requires government entities to treat similarly situated people alike. Equal protection claims are not limited to individuals discriminated against based on their membership in a vulnerable class. Rather, it protects any individual's right to be free from intentional discrimination at the hands of government officials. *Campbell v. Rainbow City*, 434 F.3d 1306, 1313-14 (11th Cir. 2006). Because there is nothing before this Court to inform it of what race any of the individuals involved in this case are, this Court must, by necessity, analyze Plaintiff's claim as a "class of one" claim.

The Supreme Court has recognized the equal protection clause is implicated in "class of one" claims "where the plaintiff alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). The Board argues that Plaintiff has failed to show any similarly situated student treated differently than Joshua Davis.

In order for another student to be similarly situated to Joshua Davis, Plaintiff must

---

[2]    This Court would point out that even if this evidence was admissible, it would not affect the outcome as this Court's conclusion remains the same even assuming that Joshua Davis's behavior was adversely affected by a concussion. *See infra* Part IV.B.

show that the students are "prima facie identical in all relevant respects." *Campbell*, 434 F.3d at 1314; *accord Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) (holding in Title VII employment case that two individuals are "similarly situated" if the quantity and quality of the comparator's misconduct is "nearly identical" to the individual raising the discrimination claim). When dissimilar governmental treatment is not based on a one-dimensional decision, the "similarly situated" requirement is more difficult to establish. *See Griffin Indus., v. Irvin*, 496 F.3d 1189, 1204 (11th Cir. 2007).

Plaintiff has put forth two other individuals he claims are similarly situated to Joshua Davis, but were not expelled. The first comparator, L.H., was a WHS student who kicked Susan Sanders ("Sanders"), the school custodian, in the buttocks. The Board presented evidence that L.H. and the custodian had established a relationship of "horseplay" with each other, which L.H. took "too far" when he kicked Sanders. Sanders reported the incident to then Assistant Principal Cheryl Smith ("Smith"), and told Smith that she believed the kick was disrespectful, but that she did not believe L.H. intended to harm her. Sanders did not want formal disciplinary procedures to take place, but wanted Smith to tell L.H. that the conduct was inappropriate. Smith discussed the incident with L.H. and told him that he was not facing more severe punishment because Sanders did not believe he had kicked her in anger or with intent to harm. She also told L.H. that if it happened again, he would be sent to alternative school.

The Court does not believe that L.H. is similarly situated to Joshua Davis. This is

because the Board has presented evidence that the difference in punishment is due to individualized circumstances of the two cases. Joshua Davis was found to have struck two school officials whereas L.H. only struck one. Moreover, Joshua Davis hit Coach Carter in the face in the course of a confrontation between Joshua Davis and the coaches, whereas L.H. kicked Sanders in the buttocks in the coarse of horseplay. These facts are enough to prevent Joshua Davis from being considered similarly situated to this student. *See Maniccia*, 171 F.3d at 1368 (plaintiff suing under Title VII not similarly situated to male employees because none of them violated all four of the policies that plaintiff violated); *Burke-Fowler v. Orange County*, 447 F.3d 1319, 1324-25 (11th Cir. 2006) (in Title VII context, prison guard terminated for marrying inmate incarcerated at another prison not similarly situated with prison guards who began relationships with individuals before they were incarcerated); *Silvera v. Orange County School Bd.*, 244 F.3d 1253 (11th Cir. 2001) (plaintiff suing under Title VII terminated for having four previous arrests, not similarly situated to employee who had two previous arrests and was not terminated, even though both employees had been arrested for lewd assault on a child); *Abel v. Dubberly*, 210 F.3d 1334 (11th Cir. 2000) (plaintiff suing under Title VII, who by her own admission took $10.00 from cash register and left "IOU" note, not similarly situated with employee accused of taking money but never confessed).

Plaintiff emphasizes the fact that the Board ignored evidence that Joshua Davis was not acting with intent to harm when he hit the two coaches because the concussion was

affecting his behavior. However, even assuming arguendo that he was suffering from a concussion that affected his behavior, Joshua Davis is still not similarly situated to L.H. This is because school officials did not feel that L.H. intended to harm Sanders either, and therefore the other individualized circumstances discussed above mean L.H. is not similarly situated to Joshua Davis.

The second comparator offered by Plaintiff is C.L. who was a sixth grade student at WHS. Officials received a report that C.L. had locked another student inside a bus. When an official confronted C.L. about this he walked away from her. The official told C.L. to stop, then caught up with him and placed her hand on his shoulder. At this point, C.L. turned around, put his hands in the air and called the official a profanity. Ultimately, C.L. was disciplined by corporal punishment.

The Court finds that C.L. is not a similarly situated student to Joshua Davis. Importantly, the mere fact that C.L. was a sixth grader at the time of the incident is by itself sufficient to make the two incidents substantially different. *See Hammock ex rel. Hammock v. Keys*, 93 F. Supp. 2d 1222, 1232 (S.D. Ala. 2000) ("[E]qual protection [does not require] that elementary and high school students be treated identically in school discipline cases."). Moreover, the Board has presented evidence in the form of sworn affidavits that C.L. never struck any school official, and Plaintiff has provided no evidence to the contrary. Accordingly, C.L. is not similarly situated to Joshua Davis and can not be used to establish a prima facie case of a violation of equal protection.

## V. CONCLUSION

For the reasons set forth above, it is hereby ORDERED that

(1) Defendants' Motion for Summary Judgment (Doc # 8) is GRANTED.

(2) Defendants' Motion to Strike (Doc. # 16) is GRANTED IN PART AND DENIED IN PART.

(3) All claims and this case are DISMISSED WITH PREJUDICE.

(4) The pretrial and the trial scheduled in this matter are CANCELLED.

This Court will enter a separate final judgment taxing costs.

DONE this the 13th day of February, 2008.

        /s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE